FILED
2013 Apr-01  AM 10:00
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| FRANCINE SISTRUNK | ) | |
| o/b/o J.D.S., | ) | |
| | ) | |
|     Claimant, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-12-S-2144-E |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Francine Sistrunk commenced this action on June 12, 2012, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge, and denying the claim she asserted on behalf of her son, J.D.S. ("claimant"), for child supplemental security income benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be reversed, and the case remanded to the Commissioner for further proceedings.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the

Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant was eight years old at the time of the ALJ's decision,[1] and he alleged childhood disability due a speech and language impairment. Upon review of the hearing testimony and the medical evidence of record, the ALJ concluded that claimant had not engaged in any substantial gainful activity, and that he had the severe impairment of disorder of articulation.[2] The ALJ nonetheless found that claimant did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled one of the listings.[3] Accordingly, the ALJ found that claimant was not under a disability as defined by the Social Security Act.[4]

Claimant contends that the ALJ's decision was not supported by substantial evidence, and that it was not in accordance with applicable legal standards. More specifically, claimant asserts that the ALJ improperly considered the opinions of the consultative examiner and the non-examining reviewing physician, and failed to

---

[1] The ALJ stated in his decision that claimant was nine years old. Tr. 23. That statement must have been in error, however, because claimant's mother testified that his date of birth was November 27, 2001, Tr. 35, and the administrative decision was entered on July 26, 2010. *See* Tr. 15. Claimant would not have reached his ninth birthday until November 27, 2010.

[2] Tr. 23, 26.

[3] Tr. at 23-24, 26.

[4] Tr. 26.

2

properly develop the record by not obtaining the opinion of a medical expert at the administrative hearing.  Upon consideration, the court finds that claimant's argument about the ALJ's consideration of the consultative examiner's opinion has merit, and remand is warranted for further consideration of the examiner's opinion.

Claimant asserts that the ALJ improperly considered the assessment of Dr. June Nichols, the consultative examiner.  Social Security regulations provide that, in considering what weight to give any medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate:  the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors.  *See* 20 C.F.R. § 404.1527(d).  *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Dr. Nichols examined claimant on July 9, 2008.  She noted that claimant suffered from Intellectual Deficits and a Disorder of Articulation, but that he was not on any medication, had never been hospitalized for psychological difficulties, and had

never participated in counseling.  He repeated kindergarten due to "learning problems," attended special classes for speech, and earned mostly C's and D's, but he never experienced disciplinary problems.  Dr. Nichols found evidence of articulation difficulties during the mental status examination, but claimant's mood, affect, sleep, appetite, and energy were normal.  His stream of consciousness, orientation, memory, thought processes, and thought content were normal, but his judgment and insight were poor.  He was not involved in any formal social activities or organizations, but he did attend church, play video games, watch cartoons, and spend time with several friends.   Intelligence testing revealed a Verbal Comprehension Index score of 85, a Perceptual Reasoning Index Score of 77, a Working Memory Index score of 71, a Processing Speed Index Score of 78, and a Full Scale IQ score of 73, all of which indicated that claimant was functioning within the borderline range of intellectual ability.  Dr. Nichols assessed a disorder of articulation, borderline intellectual functioning, academic difficulties, and a GAF Score of 60, indicating moderate symptoms.  Her prognosis for claimant was as follows:

> [Claimant] is functioning in the borderline range of intellectual ability. He suffers from a disorder of articulation.  He has a history of developmental delays involving speech.  Developmental milestones were met within acceptable time. [*Claimant*] *will be unable to function in an age appropriate manner cognitively, communicatively, socially*.

4

Adaptability and behavior are consistent with his intellectual functioning.  There were no behavioral problems reported.  He should have little difficulty relating to peers and authority figures alike.  He is incapable of handling his own funds or live [sic] independently. [Claimant's] intellectual deficits will not improvement [sic] in the next 12 months.[5]

The ALJ gave Dr. Nichols' assessment "considerable weight" because it was "consistent with and supported by the claimant's school records that show him to have some academic problems, but functioning pretty well at the present time."[6] Even so, the ALJ did not mention Dr. Nichols' statement that claimant would be "unable to function in an age appropriate manner cognitively, communicatively, socially."  It must now be determined whether the ALJ's failure to address Dr. Nichols' statement was harmless error.  To make that determination, the court will consider whether the ALJ's decision would have been supported by substantial evidence, even if he had considered Dr. Nichols' statement and given it full weight.

Claimant does not appear to have asserted that he meets or medically equals any of the listed impairments.  Thus, he will be considered to be disabled only if he functionally equals a listed impairment.   To functionally equal a listing, the claimant's impairments "must be of listing-level severity; *i.e.,* [they] must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one

---

[5] Tr. 158-60 (alterations supplied).

[6] Tr. 25.

domain . . . ." 20 C.F.R. § 416.926a(a). The "domains of functioning" to be evaluated include: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; [and] (vi) Health and physical well-being." 20 C.F.R. § 416.926a(1)(i)-(vi). Social Security regulations inform claimants that "marked" limitations in these domains exist

> when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2)(i). "Extreme" limitations exist

> when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. § 416.926a(e)(3)(i).

6

Claimant has not identified the functional domains in which he claims to have marked or extreme limitations, nor has he explained why the evidence would support a finding of marked or extreme limitations in any domain.[7]  Even so, if claimant truly is "unable to function in an age appropriate manner cognitively, communicatively, [and] socially," as Dr. Nichols stated, he could experience significant limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and health and physical well being.  Thus, the ALJ's finding that claimant's impairments did not functionally equal a listing is inconsistent with Dr. Nichols' statement that claimant was unable to function in an age appropriate manner.  Perhaps the ALJ discredited that statement from Dr. Nichols because he found it to be unsupported by the remainder of the record.  Perhaps he simply overlooked the statement.  Or perhaps he intentionally did not address the statement in his administrative decision because the statement did not support the decision he had reached.  There is no way for this court to know, without any explanation from the ALJ, why he did not consider *all* of Dr. Nichols' opinion, or whether he still would have found claimant to be non-disabled if he had considered the entire opinion.  Thus, there is no way to evaluate whether the ALJ's decision was

---

[7] The closest claimant comes to making an argument on this topic is the following sentence: "The evidence establishes an articulation disorder resulting in limitations in the domains of functioning at least more restrictive than determined by the ALJ."  Doc. no. 9 (claimant's brief), at 7.

supported by substantial evidence.  Remand is warranted for the ALJ to give further consideration to the entirety of Dr. Nichols' assessment, to articulate his reasons for not crediting Dr. Nichols' statement that claimant was unable to function in an age-appropriate manner in several areas, and to conduct any other appropriate proceedings.[8]

In accordance with the foregoing, the decision of the Commissioner is REVERSED, and this action is REMANDED to the Commissioner of the Social Security Administration for further proceedings consistent with this memorandum opinion and order.  The Clerk is directed to close this file.

DONE this 1st day of April, 2013.

_____
United States District Judge

---

[8] Because remand is warranted on these grounds, there is no need to consider claimant's other arguments, *i.e.,* that the ALJ improperly considered the opinion of the non-examining, reviewing physician, and that the ALJ failed to fully develop the record by not obtaining the opinion of a medical expert during the administrative hearing.